Filed 9/14/21  P. v. Beasley CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075443 |
| v. | (Super.Ct.No. FVI17002102) |
| JAMAL BEASLEY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Tony Raphael, Judge.  Affirmed as modified.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant and appellant Jamal Beasley was charged by information with two counts of sexual intercourse or sodomy with a child under 10 years old by a person 18 years or older. (Pen. Code,[1] § 288.7, counts 1 & 2.) He initially accepted a plea agreement, under which he pled guilty to two counts of forcible rape (§ 261, subd. (a)(2)), in exchange for a 26-year sentence and dismissal of the original charges. He subsequently withdrew his plea and proceeded to trial on the original charges. A jury found him guilty of both counts. A trial court sentenced him to consecutive terms of 25 years to life, for a total sentence of 50 years to life in state prison.

On appeal, defendant contends: (1) the court punished him for electing to go to trial by imposing a more severe sentence than the pretrial offer; and (2) his restitution and parole revocation fines should be reduced to $200. The People concede, and we agree, that the restitution fines should be reduced. Otherwise, we affirm the judgment.

FACTUAL BACKGROUND

The victim was 14 years old at the time of trial. Defendant was her uncle. When the victim was six years old, defendant sexually molested her twice when she was visiting her grandmother (his mother). Defendant was living at his mother's house at that time. On the first occasion, the victim was in defendant's room playing with Legos. She asked him for a mint, and he said that if she wanted one, she would "have to do something for him." She went over to his bed, and he pulled down her pants and then

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

2

pulled down his own pants. Defendant put the victim on his lap, facing away from him, and put his penis inside her vagina. He then took her off his lap, pulled up his pants, and gave her the mint she asked for.

About one month later, the victim was again playing Legos in defendant's room and asked him for a mint. Defendant said she would have to do something for him first, and he pulled down her pants and his. He then placed the victim on his lap and put his penis inside of her again. She felt pain and went to the bathroom and stayed there for about one hour. She noticed blood coming from her anus.

DISCUSSION

I. The Court Properly Sentenced Defendant

Defendant claims the court punished him for exercising his constitutional right to a jury trial by sentencing him to 50 years to life. He argues that "[t]here is no other rational explanation for the gross disparity between the 26-year plea deal [he] was offered (and temporarily accepted) before trial, and the 50-year-to-life sentence he received after availing himself of the right to a jury trial." He contends the court should have exercised its discretion under section 669 to run the two 25-year-to-life terms concurrently since no facts came out at trial that made his offenses "particularly reprehensible or heightened his culpability." We conclude the court properly exercised its discretion and sentenced defendant to consecutive terms.

3

A. *Procedural Background*

On June 7, 2019, defendant entered a plea agreement and pled guilty to two counts of forcible rape (§ 261, subd. (a)(2)), which were added as counts 3 and 4, in exchange for two consecutive sentences of 13 years, for a total of 26 years in state prison.

On August 2, 2019, the date scheduled for sentencing, defense counsel asked the court to trail the matter for one week for a *Marsden*[2] hearing. The prosecutor informed the court that he believed defendant actually wished to withdraw his plea and that the People would agree to let him do so. The court continued the matter and held a *Marsden* hearing on August 6, 2019. The court appointed counsel to advise defendant on whether to withdraw his plea. Defendant informed the court that he wanted to withdraw his plea. Defense counsel discussed the matter with him to confirm he was aware that since the People were not opposing his motion to withdraw the plea, it was a good sign they had a strong case, and it was not the best idea to withdraw his plea. Defendant said he understood. The court asked the prosecutor what defendant's maximum exposure would be if he was convicted at trial. The prosecutor said defendant was charged with two counts of section 288.7, subdivision (a), each count carried a sentence of 25 years to life, and the terms were "fully consecutive," so his maximum exposure was 50 years to life. The court addressed defendant and asked if he understood that if he withdrew his plea, went to trial, and was convicted on both counts, he could be sentenced to 50 years to life. Defendant said, "Yes." The court reminded him that his plea agreement was for a

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

4

determinate term of 26 years, and then asked if he still wished to make a motion to withdraw his plea. Defendant said yes, and the court granted his motion.

A jury trial was held, and defendant was convicted on both counts. The probation department recommended the court sentence him to consecutive terms, citing the factors that the crimes and their objectives were predominantly independent of each other, and the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. At the sentencing hearing, the prosecutor requested the court to follow the probation department's report as to the consecutive terms. The court acknowledged that it had the discretion to impose concurrent terms, but declined to exercise that discretion and chose to impose consecutive terms. It noted that defendant was convicted of section 288.7, subdivision (a), which did not provide for a triad of possible sentences but instead only provided for an indeterminate term of 25 years to life. It further noted that a sentence under that statute was not subject to the one-third limit for consecutive subordinate terms under section 1170.1. The court stated it was imposing consecutive terms pursuant to section 669, subdivision (a). It then cited the following factors to support its imposition of consecutive sentences: (1) defendant took advantage of a position of trust or confidence to commit each offense; (2) the crimes and their objectives were predominantly independent of each other; and (3) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. The court further found that section 654 did

not apply.  It then sentenced defendant to 25 years to life on count 1, and a consecutive 25 years to life on count 2.

B.  *Defendant Forfeited His Claim*

The People argue that defendant forfeited his claim that the court punished him for proceeding to trial by sentencing him to 50 years to life since he did not object at the sentencing hearing.  We agree that defendant cannot raise this claim for the first time on appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal."].)  Defendant contends that he is "not precluded from raising for the first time on appeal a claim asserting the deprivation of certain fundamental, constitutional rights."  However, he is not claiming that he was deprived of his constitutional right to a jury trial.  Moreover, he was not deprived of such right since he had a jury trial.

We also note that at the time defendant asked to withdraw from the plea agreement, the court made it clear that if he was convicted at trial on both counts, he could be sentenced to 50 years to life.  The court further reminded him that his plea agreement was for a term of 26 years.  Defendant acknowledged the difference in sentences and withdrew his plea, opting to go to trial.

In any event, defendant's claim has no merit.

C.  *The Court Properly Exercised its Discretion in Sentencing Defendant*

Defendant claims the court punished him for proceeding to a jury trial by sentencing him to 50 years to life.  He argues there is no other rational explanation for

6

imposing a sentence that was so much higher than the 26-year plea deal he was offered. However, "[a]lthough a court may not impose a harsher sentence on a defendant as punishment for exercising his or her jury trial right, '[t]here must be some showing, properly before the appellate court, that the higher sentence was imposed as punishment for exercise of the right.' " (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 762, overruled in part on other grounds in *People v. Bryant* (2021) 11 Cal.5th 976.)  " 'The mere fact . . . that following trial defendant received a more severe sentence than he was offered during plea negotiations does not in itself support the inference that he was penalized for exercising his constitutional rights.' " (*Ghebretensae*, at p. 762.) Defendant has not made any showing that the court imposed its sentence as punishment for him choosing to go to trial.

Defendant relies upon *People v. Morales* (1967) 252 Cal.App.2d 537 in support of his position. *Morales* is distinguishable.  In that case, the defendant argued that "in imposing a consecutive sentence the court appeared to have based its decision solely upon the fact that [he], although having no substantial defense to present to the instant charge, pled not guilty and demanded a jury trial, thus inconveniencing the court." (*Id.* at p. 542.)  The appellate court agreed, noting that the court did not consider the proper factors in deciding to impose a consecutive sentence. (*Id.* at p. 546.)  It noted that "the record makes it clear that the sole basis for the trial court's decision in the instant case related to the fact that defendant had pled not guilty and demanded a jury trial despite the fact that in the trial court's opinion he did not present a meritorious defense." (*Ibid*.)  The appellate court remanded the case for resentencing, concluding that "the trial judge

7

abused his discretion because the particular factors utilized by him as his guides for sentencing should not have entered into the sentencing process." (*Id*. at p. 547.)

Unlike *Morales,* the court here relied upon proper factors in exercising its discretion to impose the terms consecutively. It expressly cited the following factors to support its imposition of consecutive sentences: (1) defendant took advantage of a position of trust or confidence to commit each offense; (2) the crimes and their objectives were predominantly independent of each other; and (3) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. These factors supported the imposition of consecutive sentences. (Cal. Rules of Court, rule 4.425; *People v. Caesar* (2008) 167 Cal.App.4th 1050, 1060 (*Caesar*), disapproved in part by *People v. Superior Court* (*Sparks*) (2010) 48 Cal.4th 1, 18-19.) We observe that defendant does not dispute any of these factors. Moreover, defendant does not even address the fact that under his original plea agreement he pled guilty to different charges than he was originally charged with. He was originally charged with two counts of violating section 288.7, subdivision (a) (sexual intercourse or sodomy with a child under 10 years old by a person 18 years or older). Each of these offenses carried a sentence of 25 years to life if defendant were to be convicted. Pursuant to his plea agreement, defendant pled guilty to two counts of violating section 261, subdivision (a)(2) (forcible rape). Each of the amended charges allowed for a determinate sentence and carried a lesser maximum exposure than the original charges. Once the defendant withdrew his plea and original charges were reinstated, the court no longer had the option of sentencing defendant to a determinate

8

term. The only question after defendant's conviction on the original charges was whether the term would be concurrent or consecutive. For the reasons previously expressed, we find that the court properly exercised its discretion in making the determination to sentence defendant consecutively.

In sum, there is no basis for defendant's claim that his sentence of 50 years to life constituted a punishment for exercising his right to a jury trial. The sentence for a violation of section 288.7 is 25 years to life, defendant was convicted of two counts, and the court properly exercised its discretion in imposing consecutive terms. (See § 288.7, subd. (a); *Caesar*, *supra*, 167 Cal.App.4th at p. 1060.)

## II. The Restitution and Parole Revocation Fines Should Be Reduced

Defendant contends that the court intended to impose the statutory minimum fines and fees in this case, but erroneously imposed the current statutory minimum of $300, rather than the $200 statutory minimum in place at the time of the offenses. The People concede, and we agree.

### A. *Background*

The court sentenced defendant on July 24, 2020. At the sentencing hearing, it ordered defendant to pay a restitution fine of $300 pursuant to section 1202.4, and a parole restitution fine under section 1202.45 in the same amount. Prior to ordering these fines, the court stated: "Under 1202.4, Subsection C, the Court does have the discretion and does take into account the defendant's inability to pay as allowed under that subsection in determining the imposition of restitution fines in excess of the mandatory

9

minimum.  And the Court does find that the defendant is indigent.  I will impose the minimum fines and fees in this case."

B.  *The Fines Should Be Reduced to $200*

A restitution fine is to be imposed under the law applicable at the time of the offense, not at the time of sentencing.  (*People v. Souza* (2012) 54 Cal.4th 90, 143 (*Souza*); *People v. Saelee* (1995) 35 Cal.App.4th 27, 30-31; *People v. Kramis* (2012) 209 Cal.App.4th 346, 349-350 ["It is the fact of the conviction that triggers imposition of a section 1202.4, subdivision (b)(1) restitution fine."].)

"It is well established that the imposition of restitution fines constitutes punishment, and therefore is subject to the proscriptions of the ex post facto clause and other constitutional provisions."  (*Souza*, *supra*, 54 Cal.4th at p. 143.)  The application of the law in effect at the time of sentencing, as opposed to the law applicable at the time of the offense was committed, violates ex post facto principles.  (*Ibid.*)

Defendant was convicted of committing two counts of sexual intercourse or sodomy with a child under 10 years old by a person 18 years or older (§ 288.7, subd. (a)) between June 1, 2010 and September 30, 2011.  At the time the crimes were committed, former section 1202.4 required setting a restitution fine of between $200 and $10,000.  (Former § 1202.4, subd. (b)(1).)  Section 1202.45 provided for the imposition of an additional fine in the same amount "in every case where a person is convicted of a crime and whose sentence includes a period of parole."  (Former § 1202.45.)  At the time of sentencing on July 24, 2020, section 1202.4 provided for a minimum restitution fine of $300.  (§ 1202.4, subd. (b)(1).)  The trial court stated it would impose the minimum fines

10

and fees in this case and then ordered defendant to pay restitution under section 1202.4 in the amount of $300 and a parole revocation fine under section 1202.45 in the same amount. Because the court intended to impose the minimum statutory amount, and the minimum statutory amount at the time of defendant's offenses was $200, we will reduce defendant's restitution fines under sections 1202.4 and 1202.45 from $300 to $200.[3]

DISPOSITION

The judgment is modified to reduce the amounts of the restitution fine under section 1202.4 and the parole revocation fine under section 1202.45 to $200. The clerk of the superior court is directed to prepare an amended abstract of judgment to reflect these modifications and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

---

[3] In light of our decision, it is unnecessary to address defendant's additional contentions that even though he did not object to the $300 fines, his claim is cognizable on appeal and that his counsel rendered ineffective assistance by failing to object.